# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-1894
Filed January 28, 2026

———————————

**In the Interest of W.S., Minor Child,**

**B.L., Mother,**
Appellant.

———————————

Appeal from the Iowa District Court for Tama County,
The Honorable Angie Johnston, Judge.

———————————

**AFFIRMED**

———————————

Sarah Dooley Rothman of Rothman Law Office, Albion, attorney for
appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Rebecca L. Petig of Bierman & Petig, P.C., Grinnell, attorney and guardian
ad litem for minor child.

———————————

Considered without oral argument
by Buller, P.J., and Langholz and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

The juvenile court terminated the parental rights of the mother and any putative father to W.S., who tested positive for methamphetamine and amphetamine at birth. The mother appeals.

## STATEMENT OF FACTS & PROCEDURAL HISTORY

W.S. was born in November 2024.[1] At the time of W.S.'s birth, both the child and the mother tested positive for methamphetamine and amphetamine. The mother also tested positive for THC. Medical staff reported concerns regarding the mother's ability to provide care while hospitalized following delivery. Based on those circumstances, the Iowa Department of Health and Human Services initiated a child abuse assessment on the date of the child's birth.

That same month, the juvenile court entered an order authorizing temporary removal. W.S. was placed directly from the hospital into foster care, where he has remained since removal. He was placed with foster parents, who were licensed to provide foster care and willing to adopt, and had remained in that home ever since.

The State filed a child-in-need-of-assistance petition shortly after removal. Following a November hearing, the removal was continued. In December, the parties stipulated that W.S. was a child in need of assistance under multiple subsections of Iowa Code section 232.96A (2024) due to substance exposure, lack of adequate supervision, and risk of harm. Disposition was entered in January 2025, continuing the child's placement

---

[1] Paternity was never legally established. One individual was identified by the mother as a possible father. Paternity testing was scheduled multiple times but never completed. No putative father appeared or assumed responsibility for the child.

outside the mother's custody and requiring the mother to engage in substance-use treatment, comply with drug testing, and participate in services designed to facilitate reunification.

Throughout the pendency of the case, the mother struggled with chronic substance use. Drug testing both before and after the child's birth reflected repeated positive results for methamphetamine and other substances. The mother attempted treatment on more than one occasion, including inpatient and outpatient services, but did not demonstrate sustained sobriety in the community. At least one attempt at inpatient treatment ended prematurely. Although there were periods when the mother partially engaged with services, her substance use remained a recurring concern.

The mother was also subject to supervised probation in an unrelated criminal matter. During the course of the child-in-need-of-assistance case, she was arrested multiple times for probation violations tied to substance use. In March 2025, her probation was revoked, and she was sentenced to incarceration. She remained incarcerated through the permanency hearing and the termination trial.

Prior to her incarceration, the mother had supervised visitation due to the child's age and safety concerns. Following her incarceration, parent-child contact was limited but not eliminated. The department facilitated video and in-person contact consistent with institutional requirements.

A permanency hearing was held in May. At that time, the child had been out of parental custody for approximately six months. The juvenile court changed the permanency goal to termination of parental rights and

adoption, citing the mother's incarceration, unresolved substance use, and the child's need for permanency.

On June 9, the State filed a petition seeking termination of parental rights. The petition stated multiple statutory grounds under Iowa Code section 232.116, including grounds related to abandonment by any putative father, the child's age and length of removal, and the mother's severe substance-related disorder. The termination hearing was held on September 3, 2025. The mother appeared remotely from prison and was represented by counsel. The court received testimony from service providers and admitted documentary exhibits, including records from the underlying child-in-need-of-assistance case.

On October 28, the juvenile court entered an order terminating the mother's parental rights under Iowa Code section 232.116(1)(h) and (*l*), as well as the rights of any putative father under section 232.116(1)(b). The court found that the child could not be safely returned to parental custody at the time of the termination hearing and that termination was in the child's best interests. The court further found that none of the statutory exceptions to termination applied.

The mother now appeals. She challenges the termination order on grounds by contesting the timing of the permanency and termination proceedings, the denial of additional time to work towards reunification, and the adequacy of reunification efforts, particularly with respect to visitation while she was incarcerated.

The State asserts that the juvenile court's findings are supported by clear and convincing evidence, that permanency and termination were not

premature under the governing statutory framework, and that reasonable efforts were made under the circumstances of the case.

## STANDARD OF REVIEW

Our review is de novo. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc). We follow a three-step process of determining (1) whether a statutory ground for termination under Iowa Code section 232.116 has been established; (2) whether termination is in the child's best interest after applying the framework codified in section 232.116(2); and (3) whether a permissive exception under section 232.116(3) should be applied to deny termination. *Id.* We do not address any steps not challenged by a parent. *Id.* After we address any challenged steps of the three-step process, we then address any additional challenges raised by a parent. *Id.*

## DISCUSSION

### I.    Statutory Grounds.

When the juvenile court terminates a parent's rights under more than one statutory ground, we may affirm on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, the juvenile court terminated the mother's rights under section 232.116(1)(h) and (*l*). We focus on paragraph (h), which permits termination of parental rights upon proof of all the following:

> (1)     The child is three years of age or younger.
>
> (2)     The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>
> (3)     The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for

the last six consecutive months and any trial period at home has been less than thirty days.

> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). The mother does not directly challenge any of the criteria set forth in 232.116(1)(h). Rather, she contends that the timing of the permanency hearing was off[2] so as to render the termination proceeding invalid. A review of the record leaves us unsatisfied that such alleged error was preserved for our review. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). The mother did not raise her permanency-hearing-timing argument at the termination hearing, and so, the juvenile court also never ruled on that argument. Because error was not preserved, we decline to address the issue for the first time on appeal. As the mother makes no claim that the child could be returned to her custody at the

---

[2] Specifically, the mother advances that the termination of parental rights was an error of law based on it occurring prematurely. She relies on Iowa Code section 232.104 and alleges that this code section prevents permanency hearings from being held until twelve months after removal. Iowa Code section 232.104 states that

> The time for the initial permanency hearing for a child subject to out-of-home placement shall be the earlier of the following: (1) For a temporary removal order entered under section 232.78, 232.95, or 232.96, for a child who was removed without a court order under section 232.79, or for an order entered under section 232.102, for which the court has not waived reasonable efforts requirements, the permanency hearing shall be held *within twelve months* of the date the child was removed from the home.

Iowa Code § 232.104(1)(a)(1) (emphasis added). The child was removed on November 4, 2024. The permanency hearing occurred on May 7, 2025. The mother reads Iowa Code § 232.104 as requiring the juvenile court to wait until twelve months after removal to conduct permanency.

time of the termination hearing, any challenge to statutory termination under section 232.116(1)(h) fails, and we affirm on that ground.

## II.    Additional Time.

As recited above, the mother does not contend that the child could have been returned to her custody at the time of the termination hearing—she was in prison. Rather, she contends that if she had been given more time she may have made parole during the extension so as to possibly allow the child to return to her custody.  She essentially argues she should have been given more time for reunification given her incarcerated status.

This is an option permitted by statute.  *See* Iowa Code § 232.117(5) (permitting entry of a permanency order under section 232.104 if the court does not terminate parental rights); *see also id*. § 232.104(2)(b) (authorizing a permanency option of an additional six months to work toward reunification). But to exercise this option, we must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id*. § 232.104(2)(b).

The juvenile court, when considering the grant of an extension of time, stated:

> There is literally no way of knowing whether [the mother] will be able to obtain housing and maintain sobriety when released from prison. [W.S.] is less than one year old and all his needs must be met by [his] caregiver. In addition, [W.S.] has had some health problems that are likely the result of [the mother's] drug use while she was pregnant. [The mother] is physically unable to currently meet any of [W.S.'s] needs and it is entirely speculative that she would be able to meet those needs to maintain [W.S.'s] safety even if she were released from prison tomorrow.

Like the juvenile court, we see no evidentiary support for a determination that the need for removal will change if the mother was given six more months. By the time of the termination trial, the child had been out of the mother's custody for nearly ten months, but the mother was no closer to regaining custody than when the child was initially removed. She had gone long stretches without physically visiting, let alone caring, for the child, and the visits she did exercise remained supervised. *See In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024) (finding failure to progress beyond supervised visits supports termination of parental rights), *overruled on other grounds by L.A.*, 20 N.W.3d at 534. Indeed, "children should not be forced to wait for their parent to be able to care for them, particularly when [the court] ha[s] so little evidence to rely upon to believe the circumstances will be different in six months." *In re M.M.*, No. 15-0214, 2015 WL 1332330, at *2 (Iowa Ct. App. Mar. 25, 2015). The juvenile court was correct to conclude that the mother should not be given six more months to work toward reunification.

### III.    Reasonable Efforts.

The mother argues that the visitation with the child she was afforded was not reasonable and prevented the establishment of a bond that could have been an exception to termination under Iowa Code section 232.116(3)(c). The mother frames this issue on appeal as a reasonable-efforts challenge towards the ability to establish a parent-child bond, which she could then prove as a permissive exception to termination, rather than a reasonable-efforts challenge towards reunification itself.

Iowa Code § 232.102A(1)(a) states that "[r]easonable efforts" are "the efforts made to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home."

*See also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Visitation is "an important ingredient to the goal of reunification." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

Here, the mother was provided regular weekly visits when she was not incarcerated. And when she was incarcerated, the department case manager worked to facilitate contact between the mother and the child consistent with Iowa Department of Corrections rules. The mother does not deny that she did not have a strong bond with her child. Rather, she argues that the reason for the lack of bond was because of her lack of visitation. However, at no time did the mother file a motion for lack of reasonable efforts before the juvenile court. "We have repeatedly emphasized the importance for a parent to object to services early in the process so appropriate changes can be made." *In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000). No such objections occurred. The juvenile court found that the mother had "been inconsistent with visits and at least on one occasion the provider believed [the mother] to be under the influence while at a visit." The State fulfilled its obligation to provide reasonable efforts toward reunification in this case.

**AFFIRMED.**